UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| DAVID A. GINGRAS, | ) | CIV.  05-5098-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING PLAINTIFF'S |
| | ) | MOTION TO DISMISS AND |
| KRAIG WOOD; TONY HARRISON; | ) | GRANTING DEFENDANTS' |
| MARK BLACK; MIKE WALKER; | ) | MOTIONS FOR SUMMARY |
| JOHN GRISWOLD; PAT WEST; | ) | JUDGMENT |
| MISTI WALKER; and JOHN | ) | |
| GOBLE, | ) | |
| | ) | |
| Defendants. | ) | |

Pro se plaintiff, David A. Gingras, filed a complaint against Kraig Wood,

Tony Harrison, Mark Black, Mike Walker, John Griswold, Pat West, Misti

Walker, and John Goble.  The complaint alleges multiple causes of action

against defendants under 42 U.S.C. § 1983 and state law. Gingras has

moved to dismiss defendants' qualified immunity defense.  Defendants

oppose Gingras's motion and also have moved, in three separate motions, for

summary judgment.  Gingras opposes these motions.

**BACKGROUND**

The evidence, viewed in the light most favorable to the nonmoving

party, Gingras, is:

Six or seven members of Combined Drug Enforcement Team (Team),

wearing ski masks and dressed in black, entered Gingras's home on July 16,

2004, at approximately 10:40 a.m. to execute a search warrant (Statement of Undisputed Material Facts (SUMF) by Harrison (Docket 68) ¶¶ 1, 2, 8, 9, 38). The Team was created by agreement between the South Dakota Office of Attorney General, Division of Criminal Investigation, the Pennington County Sheriff's Office, and the City of Rapid City Police Department. (Id. ¶ 39). The Team members sued in this action include Rapid City police officer Tony Harrison, Pennington County Sheriff's Department agent Kraig Wood, Meade County deputy sheriffs Misti Walker and Mike Walker, Pennington County deputy sheriff Mark Black, and South Dakota Division of Criminal Investigation agents Pat West, Jeff Goble, and John Griswold.

Before entering the home, the lead officers knocked on the door and announced they were present to execute a search warrant. (Docket 60 ¶ 6). The officers allowed more time than usual for a response because they knew Gingras was in a wheelchair. (Id.) Gingras did not hear the officers knock and announce because he was sitting next to the air conditioner and was under the influence of methamphetamine and marijuana that morning. (Harrison SUMF ¶¶ 6, 22; Docket 55 (Gingras Dep.) at 55:1-56:10). The officers "burst open" the front door to the home, and Harrison, the first officer through the door, pointed a gun at Gingras. (Harrison SUMF ¶ 7). The officers who followed Harrison into the door, except possibly Wood–who was not involved in the initial entry–also pointed their guns at Gingras.

2

Harrison told Gingras to put up his hands and Gingras complied.  (Id.; Docket 78 ¶¶ 17, 18).

Harrison handcuffed Gingras, placing Gingras's hands behind the back of his wheelchair.  (Harrison SUMF ¶¶ 7, 10).  Gingras complained that the handcuffs were too tight, so Harrison removed the handcuffs and put Gingras's hands in front of his body and "recuffed" Gingras.  (Id. ¶ 11). Wood and Mike Walker moved Gingras, grabbing his wheelchair and pushing Gingras through the house, out the back door, down a wheelchair ramp, and into the garage, where they questioned him.  (Id. ¶¶ 12, 13, 15; Docket 69-7 Findings of Fact ¶ 3).  Gingras remained in handcuffs until minutes before the officers left the house after completing their search, for a total of forty-five minutes to an hour.  (Harrison SUMF ¶ 16).  Gingras suffered no physical injury or bruising from the handcuffing or execution of the search warrant, but he did have marks and indentations on his arms.  (Id. ¶¶ 17, 21).  During the search, the officers found over four pounds of marijuana in Gingras's safe, but he was not arrested that day.  (Id. ¶¶ 18, 19).  Gingras was not armed the day of the search and did not own a weapon.  (Id. ¶ 20).

West has over three hundred hours of training in drug investigation and enforcement, including high risk entry and search procedures, has participated in over five hundred dynamic entries, and has been involved in over seven hundred felony arrests.  (Id. ¶¶ 24, 25).  Based on his training

3

and experience, West knows that people involved in narcotics trafficking often possess firearms and, therefore, the Team uses dynamic entry with their weapons drawn when serving a narcotics search or arrest warrant to ensure officer safety, suspect safety, and to prevent destruction of evidence. (Id. ¶ 26).  During their pre-search briefing from Wood, Team members were informed that information had been provided that Gingras carried a pistol and had a history of drug involvement.  (Id. ¶ 28).

Gingras later pleaded guilty to possession with intent to distribute one pound or more of marijuana and was sentenced to a fifteen-year prison term, with eight years suspended, at the South Dakota State Penitentiary.  (Id. ¶ 30; Docket 69-5 at 9).  Gingras filed a Petition for Writ of Habeas Corpus in the Fourth Judicial Circuit Court, claiming he received ineffective assistance of counsel due to (1) trial counsel's failure to raise claims that the officers did not properly knock and announce their presence before entering his home, and (2) counsel's failure to claim Gingras was subjected to excessive force when the officers entered his home.  (Harrison SUMF ¶ 32; Docket 69-5 at 3-5).  Circuit Judge John W. Bastian entered judgment against Gingras on the habeas petition, finding (1) Gingras's attorney had filed two motions to suppress, claiming that Gingras was subjected to an unreasonable search and seizure in violation of the Fourth Amendment (Docket 69-7, Findings of Fact ¶¶ 10, 11); (2) Gingras's habeas petition asserted a violation of the

4

Fourth Amendment due to the officers' failure to knock and announce their presence (Id. ¶ 20); (3) Gingras was not a credible witness, and rejecting his testimony (Id. ¶ 24); (4) the officers provided credible testimony that they had information that Gingras was involved in drug trafficking, that Gingras had a gun, and that they had concerns for their safety, destruction of evidence, and the risk Gingras posed (Id. ¶¶ 26, 27); (5) the officers knocked several times before entering Gingras's home, announcing their presence and loudly yelling "search warrant" at least three times, and Gingras did not respond to them (Id. ¶¶ 28, 29, 30); (6) the officers waited fifteen seconds or more before entering Gingras's home (Id. ¶ 32); and (7) the officers executed the search warrant in a reasonable manner (Id. ¶ 37). Judge Bastian concluded that (1) Gingras suffered no prejudice due to trial counsel's failure to raise the knock and announce issue, because officers properly followed the knock and announce provisions listed in the search warrant (Id., Conclusions of Law ¶¶ 6, 7); (2) the officers' entry was not illegal, because they waited longer than time periods approved in previous cases, the officers did not use excessive force, Gingras's handcuffing was reasonable, and Gingras's detention was reasonable (Id. ¶ 8); (3) the search warrant was valid (Id. ¶ 10); and (4) Gingras had not shown the officers violated his constitutional rights during the search (Id. ¶ 12). Judge Bastian and the South Dakota

Supreme Court denied Gingras's Applications for Certificate of Probable

Cause to appeal the denial of the habeas petition.  (Docket 69-8; 69-9).

Gingras did not provide the 180-day notice of injury that is required

before he may pursue the state-law-based tort claims possibly listed in his

complaint (Docket 69-11; 76; 77).  Gingras filed the instant lawsuit on

November 7, 2005, claiming (1) his Fourth Amendment rights were violated

by defendants' failure to knock and announce their presence when they

entered his home, (2) defendants used excessive force in arresting him, and

(3) defendants violated state law by falsely imprisoning him.  (Docket 1).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c).  In determining whether summary judgment should issue, the facts

and inferences from those facts are viewed in the light most favorable to the

nonmoving party, and the burden is placed on the moving party to establish

both the absence of a genuine issue of material fact and that such party is

entitled to judgment as a matter of law.  Id.; Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538

(1986).  Once the moving party has met this burden, the nonmoving party

may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists.  To determine whether a genuine issue of material fact exists, the court views the evidence based upon which party has the burden of proof under the applicable substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**DISCUSSION**

**I.    Motion to Dismiss Qualified Immunity Defenses**

Gingras moves for dismissal of defendants' qualified immunity defenses.  Gingras previously filed a similar motion on May 17, 2006.  See Docket 36.  United States Magistrate Judge Marshall P. Young denied the motion as premature.  See Docket 47.  Before defendants filed motions seeking summary judgment based on qualified immunity, Gingras filed the instant motion again seeking a dismissal of that defense.  Gingras claims the "issue should be decided as early as possible," and "Defendants here are not [e]ntitled to the cloak of Qualified Immunity as a defen[s]e."  See Docket 50. As explained below, the court concludes defendants are entitled to qualified immunity, and Gingras's motion is denied.

**II.   Official Capacity Claims**

Gingras sued defendants without stating the capacity in which they were sued.  Thus, the court presumes that the defendants are being sued in

7

their official capacities.  Artis v. Francis Howell N. Band Booster Ass'n, 161 F.3d 1178, 1182 (8th Cir. 1998).  "Suits against public employees in their official capacity are the legal equivalent of suits against the governmental entity itself."  Bankhead v. Knickrehm, 360 F.3d 839, 844 (8th Cir. 2004).

### A.   Eleventh Amendment Immunity

#### 1.   West, Griswold, and Goble

West, Griswold, and Goble are all employed as Agents of the South Dakota Department of Criminal Investigation.  As a result, the court must treat Gingras's claims against West, Griswold, and Goble as if presented against the State of South Dakota.  State officials are not liable on claims against them in their official capacities due to Eleventh Amendment immunity.  Morstad v. Dep't of Corr. & Rehab., 147 F.3d 741, 743 (8th Cir. 1998) (citing Kentucky v. Graham, 473 U.S. 159, 169, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)) (noting "the Eleventh Amendment bars suit against the state or state officials acting in their official capacity").  Accordingly, West, Griswold, and Goble are entitled to summary judgment on Gingras's claims against them in their official capacities.

#### 2.   Wood, Black, Misti Walker, Mike Walker, and Harrison

The court normally would treat the official capacity claims against Wood, Black, Misti Walker, and Mike Walker as claims against Pennington and Meade counties, and would treat the official-capacity claims against

8

Harrison as a suit against the City of Rapid City.  Defendants argue, however, that because they were members of the Team at the time of the events giving rise to this lawsuit, they were acting as "arms of the state" and are entitled to Eleventh Amendment immunity.

Eleventh Amendment immunity is available to states and "arms" of the state, but not to local governments.  Thomas v. St. Louis Bd. of Police Comm'rs, 447 F.3d 1082, 1084 (8th Cir. 2006).  To answer the question of whether a particular agency is an arm of the state entitled to Eleventh Amendment immunity, courts must "consider[ ] the provisions of state law that define the agency's character."  Id. (citation omitted).  The court "look[s] generally to three factors: (1) an agency's powers and characteristics under state law; (2) an agency's relationship to the state-its autonomy from the state and degree of control over its own affairs, and (3) whether any award would flow from the state treasury."  Gorman v. Easley, 257 F.3d 738, 743 (8th Cir. 2001), rev'd on other grounds sub nom. Barnes v. Gorman, 536 U.S. 181, 122 S. Ct. 2097, 153 L. Ed. 2d 230 (2002).  The court "give[s] substantial weight to whether litigation against a particular entity would draw on the public fisc."  Id. at 744.

These defendants cite Beaulah v. Muscogee County Sheriff's Deputies, 447 F. Supp. 2d 1342 (M.D. Ga. 2006), in support of the argument that they had become arms of the state (and thus entitled to Eleventh Amendment

9

immunity) by virtue of their positions on the Team.[1]  Defendants concede that the Team is not an entity defined by state law, and that the state of South Dakota is not responsible for judgments against the Team.  (Docket 67 at 8).  Defendants argue that they, in their official capacities, are arms of the state because they meet two of the factors listed by the <u>Beaulah</u> court, and that the <u>Beaulah</u> court did not state that all four factors must be met. Still, under Eighth Circuit law, the court must "give substantial weight to whether litigation against a particular entity would draw on the public fisc." <u>Gorman</u>, 257 F.3d at 743.  Based on the evidence presented, the court cannot conclude that the county and city defendants, in their official capacities, are "arms of the state" entitled to Eleventh Amendment immunity.

### B.   Custom or Policy

Based on the foregoing, the claims against Wood, Black, Mike Walker, and Misti Walker in their official capacities must be construed as claims against Pennington and Meade Counties, and the claims against Harrison must be construed as claims against the City of Rapid City.  "A plaintiff may

---

[1]The court in <u>Beaulah</u> listed four factors a court must consider in determining whether a defendant is an arm of the state.  In simplest terms, <u>Beaulah</u> adds one element to those listed in <u>Gorman</u>.  The additional <u>Beaulah</u> factor requires a court to consider from "where the entity derives its funds." <u>Beaulah v. Muscogee County Sheriff's Deputies</u>, 447 F. Supp. 2d 1342, 1355 (M.D. Ga. 2006).

establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a "custom or usage" with the force of law.' " Ware v. Jackson County, Mo., 150 F.3d 873, 880 (8th Cir. 1998) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (internal quotations omitted)).  "Official policy involves 'a deliberate choice to follow a course of action . . . made from among various alternatives' by an official who has the final authority to establish governmental policy." Jane Doe A v. Special Sch. Dist. of St. Louis County, 901 F.2d 642, 645 (8th Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)).  Alternatively, "custom or usage" is shown by:

(1)  The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
(2)  Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
(3)  Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation.

Id. at 646  "[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell, 436 U.S. at 691.

11

Gingras has not alleged his constitutional rights were violated as a result of an official policy of Pennington or Meade counties or of the City of Rapid City.  Gingras also has not presented evidence that a custom existed in any of these entities that was the moving force behind any alleged constitutional violation he suffered. The "failure to include any 'allegations, reference, or language by which one could begin to draw an inference that the conduct complained of . . . resulted from an unconstitutional policy or custom' renders the complaint deficient." Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 591 (8th Cir. 2004) (quoting Doe v. Sch. Dist. of Norfolk, 340 F.3d 605, 614 (8th Cir. 2003)).  Accordingly, Wood, Black, Mike Walker, Misti Walker, and Harrison are entitled to summary judgment on the claims against them in their official capacities.

**C.   Individual Capacity Claims**[2]

Defendants contend Gingras is barred from relitigating claims he already has made in his state habeas corpus proceedings.  The county defendants also contend Gingras's claims are barred by the doctrine announced in Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994).  Finally, all defendants claim they are entitled to qualified

_____

[2]As noted above, the court concludes Gingras sued defendants in their official capacities only.  Regardless, the court will address the potential claims against defendants in their individual capacities for the sake of completeness.

12

immunity from Gingras's claims.  As explained below, defendants are correct, and dismissal of Gingras's claims is proper on all these bases.

### 1.   Collateral Estoppel/Res Judicata

The county and city defendants argue Gingras's claims are barred by collateral estoppel and res judicata based on a previous state court habeas corpus proceeding.  The state defendants similarly argue Gingras cannot relitigate the claims already resolved against him in his state habeas corpus case.  The court agrees, as more fully set forth below.

"The federal courts generally have also consistently accorded preclusive effect to issues decided by state courts."  Allen v. McCurry, 449 U.S. 90, 95, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980).  "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  Id. at 94,101 S. Ct. 411, 66 L. Ed. 2d 308.  "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."  Id.  In fact, "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."  Id. at 96 (citing 28 U.S.C. § 1738).

13

Under South Dakota law, application of the res judicata doctrine requires four factors be met.  These factors are:  (1) whether an issue decided in a prior adjudication is identical to the present issue; (2) whether the prior adjudication resulted in a final judgment on the merits; (3) whether the parties in both actions are the same or in privity; and (4) whether there existed in the first adjudication a full and fair opportunity to litigate the issues.  Frigaard v. Seffens, 599 N.W.2d 646, 648 (S.D. 1999).  Also, the Eighth Circuit has "conclude[d] that, when an inmate has exhausted state post-conviction remedies, the state proceedings must be given collateral estoppel effect in a subsequent § 1983 damage action, even though collateral estoppel would not apply in a subsequent federal habeas corpus proceeding."  Gross v. Heikien, 957 F.2d 531, 533 (8th Cir. 1992).

In his state habeas proceeding, Gingras claimed defendants violated the Fourth Amendment by using excessive force and by failing to knock and announce their presence when executing the search warrant.  Those issues were resolved against Gingras in the state habeas proceeding before Judge Bastian.  Gingras was denied a certificate of probable cause by both the state Supreme Court and the state circuit court, and thus the judgment is final on the merits.  Gingras was a party to the state habeas action and this action.  Although the habeas proceeding was initiated against the warden of the penitentiary, the warden would stand in privity with defendants in this

14

case because their interests would align with his in resisting Gingras's claims.  And Gingras had a full and fair opportunity to litigate these issues in the habeas proceeding.

The court concludes Gingras's claims are barred by res judicata and collateral estoppel.  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005) (noting a federal court must give the same preclusive effect to a prior state-court judgment that another of State's courts would give).  See Gross, 957 F.2d at 533 (observing that state proceedings must be given collateral estoppel effect in a § 1983 action, even if collateral estoppel would not apply in a later federal habeas corpus proceeding).  Furthermore, the Rooker-Feldman[3] doctrine also precludes the court from deciding Gingras's claims.  See Exxon Mobil Corp., 544 U.S. at 286, 291-92 & n.8, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (noting the Rooker-Feldman doctrine recognizes that, except in habeas corpus petitions, 28 U.S.C. § 1331 does not provide district courts with appellate jurisdiction over state-court judgments).[4]  "There is, in short, no reason to

---

[3]See Rooker v. Fid. Trust Co., 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923); D.C. Ct. of App. v. Feldman, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983).

[4]The res judicata and Rooker-Feldman "doctrines are not the same." Lemonds v. St. Louis County, 222 F.3d 488, 492-93 (8th Cir. 2000).  For example, Rooker-Feldman is a jurisdictional doctrine that cannot be waived, while res judicata is an affirmative defense that can.  Hachamovitch v. DeBuono, 159 F.3d 687, 696 n.2 (2d Cir. 1998).  Also, "[u]nlike collateral

15

believe that Congress intended to provide a person claiming a federal right

an unrestricted opportunity to relitigate an issue already decided in state

court simply because the issue arose in a state proceeding in which he

would rather not have been engaged at all." Allen, 449 U.S. at 104, 101 S.

Ct. 411, 66 L. Ed. 2d 308.  Accordingly, Gingras's claims are barred, and

defendants are entitled to summary judgment.

### 2.  Heck v. Humphrey

The county defendants contend Gingras's claims are barred by the

doctrine announced in Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364,

129 L. Ed. 2d 383 (1994).  In order for Gingras to succeed on his § 1983

claim, he must establish a constitutional deprivation.  In Heck, the Supreme

Court held:

> [I]n order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions
> whose unlawfulness would render a conviction or sentence
> invalid, a § 1983 plaintiff must prove that the conviction or
> sentence has been reversed on direct appeal, expunged by
> executive order, declared invalid by a state tribunal authorized to
> make such determination, or called into question by a federal
> court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

Id. at 486-87,114 S. Ct. 2364, 129 L. Ed. 2d 383.  The Court further

observed that "[a] claim for damages bearing that relationship to a conviction

---

estoppel, the Rooker-Feldman doctrine does not necessarily depend upon an
identity of parties or claims between the state and federal litigation."
Johnson v. City of Shorewood, Minn., 360 F.3d 810, 818 (8th Cir. 2004).

or sentence that has not been so invalidated is not cognizable under § 1983." <u>Id.</u> at 487.  In the instant case, a verdict in Gingras's favor would necessarily imply the invalidity of his South Dakota conviction.  Thus, under <u>Heck</u>, Gingras's claims are not cognizable under § 1983.

### 3.  Qualified Immunity

Defendants also argue that, even if Gingras's claims are construed as claims against them in their individual capacities, dismissal of these claims is proper based upon the doctrine of qualified immunity.  As noted above, Gingras contends the qualified immunity defense should be dismissed due to the constitutional violations committed by defendants.  "Qualified immunity shields government officials from suit unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." <u>Liebe v. Norton</u>, 157 F.3d 574, 577 (8th Cir. 1998) (citation omitted).  The doctrine serves as "an entitlement not to stand trial or face other burdens of litigation . . . ." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).  "To withstand the application of qualified immunity, a plaintiff must assert a violation of a constitutional or statutory right; that right must have been clearly established at the time of the violation; and, given the facts most favorable to the plaintiff, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action indeed violated

17

that right." <u>Liebe</u>, 157 F.3d at 577.  Thus, the court first must determine whether, taken in the light most favorable to Gingras, the facts presented show a constitutional violation.

One of Gingras's claims is based on the alleged excessive force used in arresting him.  "Where, as here, the excessive force claim arises in the context of an arrest . . . of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." <u>Graham v. Connor</u>, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (quoting U.S. Const. amend. IV).  The Fourth Amendment reasonableness test requires a determination as to whether, under the totality of the circumstances, "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." <u>Id.</u> at 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443.  Factors to consider in making the reasonableness determination include the severity of the suspect's alleged crime, whether the suspect presents an immediate threat to the safety of officers or others, and whether the suspect actively is resisting an arrest or trying to evade arrest. <u>See id.</u> at 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443.  Further, Gingras must show an "actual injury" to support a Fourth Amendment excessive force claim. <u>Hanig v. Lee</u>, 415 F.3d 822, 824 (8th Cir. 2005).

The court concludes the facts of this case do not show a constitutional violation.  Defendants performed a dynamic entry of Gingras's home, involving six or seven officers, pursuant to a search warrant authorizing entry into the home.  They had information that Gingras had a history of involvement in drugs and often carried a pistol.  During the briefing before executing the search warrant, defendants were informed that Wood, who conducted the briefing, had information that Gingras possessed a weapon.  (Docket 79 at 2).  Defendants performed the dynamic entry for purposes of officer safety, suspect safety, and to prevent destruction of evidence.  (Docket 54 ¶ 11).  In light of the facts and circumstances confronting the officers, Graham, 490 U.S. at 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443, the use of force in the dynamic entry was reasonable under the circumstances, and did not amount to an unconstitutional excessive use of force.  Furthermore, Gingras has not shown he suffered an actual injury as a result of being handcuffed or moved in his wheelchair.  Accordingly, because Gingras has not shown a constitutional violation, defendants are entitled to qualified immunity on the excessive force claim.

Gingras also claims defendants violated his constitutional rights by failing to knock and announce their presence before entering the home.  A claim based on officers' failure to knock and announce is founded on federal law only "[w]hen federal officers are a significant part of a search conducted

19

pursuant to a state warrant." <u>United States v. Murphy</u>, 69 F.3d 237, 242 (8th Cir. 1995).  The federal statute containing the "knock and announce" requirement, 18 U.S.C. § 3109, "does not apply in cases involving state officers executing state warrants." <u>Id.</u>  Thus, Gingras's claim based on the officers' failure to knock and announce must be based on state law.  "It is well settled, however, that § 1983 may be an avenue for relief only when a plaintiff asserts that violations of *federal* rights have occurred." <u>Wax 'n Works v. City of St. Paul</u>, 213 F.3d 1016, 1019 (8th Cir. 2000).  Gingras's claim based on the officers' failure to knock and announce is based on state law and is not cognizable under § 1983.

Even assuming Gingras has presented a cognizable § 1983 claim, however, the undisputed[5] evidence indicates the officers did knock and announce their presence and their intentions to enter, meaning Gingras has not offered evidence of a constitutional violation as to this claim.  Gingras has not offered evidence to rebut Judge Bastian's finding in the state habeas proceeding that officers knocked several times, loudly yelled "search warrant," and waited at least fifteen seconds before opening the door.  Thus,

---

[5]Gingras does not offer evidence that the officers *did not* knock and announce their presence.  Instead, Gingras has stated he was sitting near his air conditioner when the officers came in, and he did not hear them knock. This evidence does not contradict West's affidavit, in which he states that officers knocked and announced their presence for a longer-than-usual time because they knew Gingras was in a wheelchair.

Gingras has not presented evidence of a constitutional violation based on the alleged failure to knock and announce, and his claim based on that failure must be dismissed.

### 4.   Conspiracy

Gingras claims defendants conspired to injure him.  The Eighth Circuit has ruled that § 1983 can support a charge of civil conspiracy.  <u>Simpson v. Weeks</u>, 570 F.2d 240, 242-43 (8th Cir. 1978).  "However, 'it is the acts causing damage to the plaintiff that give rise to liability for damages, not the conspiracy itself.' " <u>Putman v. Gerloff</u>, 701 F.2d 63, 65 (8th Cir. 1983) (quoting <u>Simpson</u>, 570 F.2d at 242).  Still, although a § 1983 conspiracy claim is viable under Eighth Circuit precedent, Gingras's claim in this case must be dismissed.  To prove a § 1983 conspiracy claim, Gingras must show that a defendant conspired with others to deprive him of a constitutional right, that at least one alleged co-conspirator committed an overt act in furtherance of the conspiracy, and that the act injured him.  <u>Askew v. Millerd</u>, 191 F.3d 953, 957 (8th Cir. 1999).  Also, in order to prevail, Gingras must prove he was deprived of a constitutional right or privilege.  <u>Id.</u>  Gingras has not presented evidence of the deprivation of a constitutional right, that any defendants conspired to deprive him of such a right, that any defendants engaged in an overt act in furtherance of this conspiracy, or that he suffered an injury.  Therefore, Gingras's § 1983 conspiracy claim must be dismissed.

21

### 5.   State-Law Claims

Some language in the complaint might indicate an attempt to raise state-law tort claims.  (Docket 1-1 §§ IV, V).  The county defendants argue Gingras did not provide notice of his tort claims as required by SDCL 3-21-2 and 3-21-3.  SDCL 3-21-2 provides that no action for recovery of damages for personal injury or property damage may be maintained against a public entity or its employees unless written notice of the injury is given to the public entity within 180 days after the injury.  Substantial compliance is sufficient to fulfill the notice requirement.  Myears v. Charles Mix County, 566 N.W.2d 470, 474 (S.D. 1997).  Gingras has not produced any evidence that he complied, or substantially complied, with the notice requirement contained in SDCL 3-21-2.  Thus, defendants are entitled to summary judgment on any potential state-law tort claims Gingras may have alleged.

Based on the foregoing, it is hereby

ORDERED that the motion for dismissal of Claim of Qualified Immunity Defence [sic] by defendants (Docket 50), filed by Gingras, is denied.

IT IS FURTHER ORDERED that the motion for summary judgment by defendants Pat West, John Griswold, and Jeff Goble (Docket 52) is granted.

IT IS FURTHER ORDERED that the motion for summary judgment by defendant Tony Harrison (Docket 66) is granted.

22

IT IS FURTHER ORDERED that the motion for summary judgment by defendants Kraig Wood, Mark Black, Mike Walker, and Misti Walker (Docket 75) is granted.

Dated May 10, 2007.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE